UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAIME MOLINA,

        **Plaintiff,**                      **Case No. 8:11-cv-1642-T-27TBM**

v.

HEALTHCARE REVENUE RECOVERY
GROUP, LLC d/b/a HRRG, LLC,

        **Defendant.**

_____/

## ORDER

**BEFORE THE COURT** are Defendant Healthcare Revenue Recovery Group LLC's Motion for Summary Judgment (Dkt. 12) and Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Dkt. 13). Upon consideration, Defendant Healthcare Revenue Recovery Group LLC's Motion for Summary Judgment (Dkt. 12) is due to be granted.

### Introduction

Jaime Molina ("**Molina**") commenced this action against Healthcare Revenue Recovery Group ("**HRRG**") by filing a three count complaint alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("**FDCPA**"). Specifically, Molina alleges that HRRG violated the FDCPA by using false representations and deceptive practices in an attempt to collect a debt (Count I), by failing to provide notices required by the FDCPA in the initial communication with Plaintiff or within five days thereof (Count II), and by sending correspondence overshadowing or contradicting the FDCPA's required disclosures during the thirty-day dispute period provided by the FDCPA (Count III).

HRRG argues that it is entitled to judgment as a matter of law because: (1) the correspondence at issue does not "overshadow" the required 15 U.S.C. § 1692g(a) notice requirements; (2) HRRG provided Molina with the required notice in its initial debt validation notice letter in compliance with 15 U.S.C. § 1692(g); and (3) HRRG did not use false representations or deceptive practices in violation of 15 U.S.C. § 1692e(10). In response, Molina argues that he is entitled to judgment in his favor or, in the alternative, that genuine issues of material fact preclude summary judgment in favor of HRRG.

## Factual Background

HRRG is a third party debt collector. On May 4, 2011, HHRG sent a letter to Molina in an attempt to collect an alleged debt. The contents of the letter were entirely in English except for a notation in the top right corner provide for the convenience of Spanish speakers, which read "en Español 800-398-3975." *See* Complaint (Dkt. 1), Ex. A. The letter stated "NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION," which drew attention to the required FDCPA notice on the back of the letter. The record does not reflect what would occur if a recipient of the letter called the number designated for Spanish speakers nor is their evidence in the record indicating that the letter was targeted specifically at Spanish speakers as opposed to the the general population of those allegedly owing a debt .[1]

## Summary Judgment Standard

Summary judgment is proper if, following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp.*

---

[1] While it is undisputed that Molina understood and activiley exercised his rights under the FDCPA upon receipt of the letter, a plaintiff's subjective reaction to a debt collection letter is irrelevant to a determination of standing. *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 96 (2d Cir. 2008) ("[T]he FDCPA permits and encourages parties who have suffered no loss to bring civil actions for statutory violations.").

*v. Catrett,* 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c).  "An issue of fact is 'material' if, *under the applicable substantive law, it might affect the outcome of the case."* Hickson Corp. v. N. Crossarm Co., *357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."* Id. *at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party.* Adickes v. S.H. Kress & Co., *398 U.S. 144, 157 (1970);* Jackson v. BellSouth Telecomms., *372 F.3d 1250, 1280 (11th Cir. 2004).*

*Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial.* Celotex, *477 U.S. at 323-* 24.  The evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

The Court will not weigh the evidence or make findings of fact. *Anderson,* 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003).  Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable jury could find for the non-moving party. *Id.*

### Discussion

The FDCPA requires that debt collectors provide consumers notice of their rights to contest a debt and to have the alleged debt validated within thirty days of the "initial communication."  15 U.S.C. §1692g(a).  The required notice must not be overshadowed or contradicted by a collection agency's attempts to collect the alleged debt. 15 U.S.C. § 1962g(b); *see Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988).  In addition, 15 U.S.C. § 1692e(10) makes it unlawful for a debt collector to use "any false

3

representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.*

A "least sophisticated consumer" standard is employed to evaluate whether a debt collector's communication violates the FDCPA. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193 (11th Cir. 2010) (citing *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175-77 (11th Cir. 1985)). "'The least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Id.* at 1194 (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318, 1319 (2d Cir. 1993)). However, the test has an objective component in that "[w]hile protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness ... ." *Id.* (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996)).

Molina's principal argument is that HRRG violated the FDCPA because it included the following notation in the upper righthand corner of the initial collection letter: "en Español 800-398-3975." Specically, Molina contends that the "confusing inclusion of a Spanish-language notation prominently at the top of [the] dunning letter, in typeface larger than the body of ... the dunning letter, serves to distort, overshadow, and contradict the statutorily-required notices." Opposition Memorandum (Dkt. 13), p. 8.[2] In support of this argument, Molina relies on a single

---

[2] The Court rejects Molina's contention that the collection letter violates the FDCPA merely because the required validation notice is contained on the reverse side of the letter. The front of the letter clearly states: "NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION." *See McStay v. I.C. System, Inc.*, 308 F.3d 188, 191 (2d Cir. 2002) (holding "that when a prominent instruction in the body of the letter warns that there is important information on the reverse side, a reasonable reader, even if unsophisticated, would turn the paper over and read the back"); *see also Weber v. Computer Credit, Inc.*, No. 09-CV-187 (JBW), 2009 WL 1883046, at *6 (E.D.N.Y. June 30, 2009) ("Consumers are expected to read a debt collection letter in its entirety; no violation exists solely because the validation notice is placed on the back side of the letter.").

case from the Eastern District of New York, *Ehrich v. I.C. System, Inc.*, 681 F.Supp.2d 265 (E.D.N.Y. 2010).

In *Ehrich*, the court held that the inclusion of a Spanish sentence in a dunning letter containing a phone number overshadowed the notice that was otherwise properly provided in the letter. *Id.* at 273.[3]  First, the court determined that the least sophisticated Spanish-speaking consumer was a consumer with no ability to understand English. *Id.* at 271.  Second, the court noted:

> [T]he FDCPA notice here was ambiguous to Spanish-speaking consumers. Although the notice was provided in English, from the perspective of Spanish-speaking consumers, it was not plainly stated if they were unable to understand the English. Instead, the letter left the Spanish-speaker uncertain as to his or her rights, failing to clearly state the available options. The phone number was much more than merely supplementary to the notice because notice in Spanish was essentially never provided. Quite the contrary, the inclusion of the phone number encouraged the Spanish-speaking consumer to call and potentially waive his or her rights to challenge the validity of the debt. The sentence gave Spanish-speakers the misimpression that they understood the appropriate steps to take if they had questions, when in fact, their rights were not explained to them.

---

[3] The collection letter at issue in *Ehrich* provided:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor. *Si ud tiene alguna pregunta acerca de esta cuenta llame 800/279-9420 y referir al numero de su cuenta.* Telephone calls to or from our General Office are randomly monitored by supervisory personnel for business reasons not directly related to your account. Calls may be recorded for quality assurance.

*Ehrich*, 681 F.Supp.2d at 267-68 (emphasis added). The Spanish sentence was interpreted by plaintiffs as follows: "If you have some questions regarding your account call 800/270-9420 and refer to your account number." *Id.* at 268 n.1.

*Id.* at 272. Thus, the *Ehrich* court concluded, "even though defendant technically complied with the FDCPA by providing the notice in English, this was still not enough to meet the FDCPA requirements, and protection is, nonetheless, needed here to prevent abusive debt collection practices that specifically target non-English speaking consumers." *Id.* at 273 (citing *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 948 (7th Cir. 2004) ("[I]f [the debt collection letter] would confuse a significant fraction of the persons to whom it is directed ... the defendant will be liable.")).

This case is distinguishable from *Ehrich* because HRRG's letter does not expressly invite Spanish speakers to call HRRG with questions about their account in the text of the same paragraph furnishing the required the FDCPA notice. Nor does it refer in Spanish to the consumer's account, account number, or debt.[4] Instead, the letter merely provides an alternate telephone number for Spanish speakers. The mere inclusion of a telephone number as an accomodation to Spanish speakers does not turn an otherwise valid collection notice into a misleading, deceptive, or otherwise illegal attempt to collect a debt under the FDCPA.

Given the undisputed facts in this case, the Court concludes that a reasonable jury applying the "least sophisticated consumer" standard could not find the letter deceptive or that the inclusion of a telephone number for Spanish speakers overshadowed the notice required by the FDCPA. This is not a case where two sets of *reasonable* inferences could be drawn from a dunning letter so as to preclude summary judgment in favor of HRRG. *See Kuehn v. Cadle Co., Inc.*, 335 Fed. Appx. 827, 830 (11th Cir. 2009) ("if there are two sets of reasonable inferences that could be drawn from a dunning letter, and one set of inferences would result in a violation of

---

[4] For purposes of summary judgment, the Court presumes that the Spanish-speaking individuals fall within the category of "least sophisticated consumers." *See Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 774 (7th Cir. 2007) (noting that "if the debt collector has targeted a particularly vulnerable group – say, consumers who he knows have a poor command of English – the benchmark for deciding whether the communication is deceptive would be the competence of the substantial bottom fraction of *that* group.").

6

15 U.S.C. § 1692e(10), while the other would not, it was appropriate for a jury to decide which set of inferences to draw") (citing *Jeter*, 760 F.2d at 1176)).[5]

<u>Conclusion</u>

For the forgoing reasons, Healthcare Revenue Recovery Group LLC's Motion for Summary Judgment (Dkt. 12) is **GRANTED**. The Clerk is directed to **ENTER** judgment in favor of Defendant Healthcare Revenue Recover Group LLC and **CLOSE** this case.

**DONE AND ORDERED** in chambers this 26ᵗʰ day of July, 2012.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record

---

[5] Indeed, to conclude otherwise would result in HRRG beging held liable for the very "bizarre or idiosyncratic interpretations of collection notices" that the objective component of the "least sophisticated consumer" test is designed to prevent. *See LeBlanc*, 601 F.3d at 1194.

7